## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRGINIA DEPARTMENT OF MEDICAL ASSISTANCE SERVICES<br>Suite 1300<br>600 East Broad Street<br>Richmond, VA 23219<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>200 Independence Avenue S.W.<br>Washington, D.C. 20201<br><br>and<br><br>CHARLES E. JOHNSON,<br>Acting Secretary of the<br>United States Department of<br>Health and Human Services<br>200 Independence Avenue S.W.<br>Washington, D.C. 20201<br><br>*Defendants,* | **COMPLAINT** |

## NATURE OF ACTION

1. This is a Complaint for declaratory and injunctive relief brought by the Virginia Department of Medical Assistance Services ("DMAS") regarding federal reimbursement for the State's Medicaid expenditures. The Medicaid program is governed by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* Pursuant to Title XIX, the Medicaid program is administered by each State, with federal financial participation in the State's expenditures for medical assistance.

2. At issue is the scope of medical assistance that the Medicaid program provides to children receiving services in inpatient psychiatric facilities, referred to under Title XIX as "institutions for mental diseases" or "IMDs." DMAS believes that Medicaid-eligible children in IMDs are entitled to all Medicaid benefits, comparable to the benefits that Medicaid provides to children who are not in IMDs. The federal Centers for Medicare and Medicaid Services ("CMS") has taken the position that Medicaid may pay only for the costs of inpatient psychiatric services provided "in and by" the IMDs. Accordingly, CMS has "disallowed" and denied $3,948,532 of federal financial participation in DMAS's expenditures for a number of health care items and services provided to children in IMDs, including physician, therapist, and other professional services; prescription drugs; and acute care hospital services. Although the disallowance covers a four-year period, from July 1, 1997 to June 30, 2001, the dispute between the parties is ongoing and DMAS is at risk of additional disallowances in the future.

3. DMAS protested the disallowance in an appeal to the United States Department of Health and Human Services Departmental Appeals Board ("the DAB" or "the Board") on April 4, 2008, pursuant to Section 1116(e) of the Social Security Act (42 U.S.C. § 1316(e)). The DAB upheld the disallowance in a decision dated December 31, 2008, but noted that CMS could reduce the disallowance to reflect data presented by DMAS in the course of the appeal. *In re Virginia Department of Medical Assistance [Services]*, DAB Decision No. 2222 (Dec. 31, 2008) (appended hereto as Exhibit 1). To date, CMS has not revised the disallowance amount.

4. DMAS asks this Court for a declaration that Defendants' disallowance of federal financial participation in necessary medical services to children in IMDs was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law; a declaration that Title XIX of

the Social Security Act does not limit federal funding for medical services to children in IMDs to inpatient psychiatric services; a declaration that CMS did not observe procedure required by law when it failed to engage in notice-and-comment rulemaking, or otherwise failed to give DMAS actual and timely notice of its position regarding reimbursement for services to children in IMDs prior to taking the disallowance; an injunction preventing CMS from enforcing or giving effect to DAB No. 2222; and an injunction ordering Defendants to restore to Virginia the full amount of the disallowance, plus interest.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331, which provides for original jurisdiction in suits involving questions arising under federal law.

6. This Court has venue under 28 U.S.C. Section 1391(e)(1) and (2).

7. Judicial review in this Court is authorized by 42 U.S.C. Section 1316(e)(2)(C), which provides for review in this Court of final decisions of the DAB regarding disallowances of claims for federal financial participation under title XIX of the Social Security Act. This appeal is filed within 60 days of the date of the DAB's decision.

8. Judicial review is also authorized by the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), which provides for review of "final agency actions." The December 31, 2008 decision sustaining the federal disallowance constitutes "final agency action" within the meaning of 5 U.S.C. Section 704.

9. DMAS's request for declaratory relief is authorized by 28 U.S.C. Sections 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. There presently exists an actual controversy between the parties.

## PARTIES

10. Plaintiff Virginia Department of Medical Assistance Services is a state agency responsible for administering the Medicaid program in the Commonwealth of Virginia.

11. Defendant the United States Department of Health and Human Services ("HHS") is an executive branch agency of the United States. CMS is a federal agency within HHS. Through CMS, HHS is the federal agency responsible for administering the Medicaid program. (For much of the period at issue in this dispute, CMS was known as the Health Care Financing Administration, or "HCFA," but DMAS will refer to the agency as "CMS" throughout this Complaint.)

12. Defendant Charles E. Johnson is the Acting Secretary of HHS. In that capacity, he is responsible for the overall administration of HHS. Acting Secretary Johnson is sued in his official capacity.

## FACTUAL AND LEGAL BACKGROUND

### A.     Medicaid Funding for Services to Persons in Institutions for Mental Diseases

13. The Medicaid program, established in Title XIX of the Social Security Act ("SSA" or "Act"), is a cooperative state-federal program that enables States to provide medical assistance to certain families with dependent children, elderly, and disabled individuals whose income and resources are inadequate to pay for necessary medical services. *See* Act, § 1901 (42 U.S.C. § 1396). The Medicaid program is administered by each State in accordance with a Medicaid state plan that is reviewed and approved by the Defendants. *See id.*

14. The cost of providing Medicaid services is shared by the States and the federal government. Act, Section 1903(a)(1) (42 U.S.C. § 1396b(a)(1)). The federal government's share, or "federal medical assistance percentage," ranges from 50 to 83 percent. Act, Section 1905(b) (42 U.S.C. § 1396d(b)). From 1997 to 2001, the years in which DMAS provided the

disputed services, the federal medical assistance percentage for Virginia ranged from 51.45 to 51.85 percent.

15. The federal government will share in the costs of "medical assistance," as that term is defined at Section 1905(a) of the Act (42 U.S.C. § 1396d(a)). When it enacted the Medicaid statute in 1965, Congress excluded inpatient psychiatric services for persons under 65 from the definition of "medical assistance." At what was then Section 1905(a)(15), the statute provided that the term "medical assistance" "does not include . . . . (B) any such payments with respect to care or services for any individual who has not attained 65 years of age and who is a patient in an institution for . . . mental diseases." Social Security Amendments of 1965, Pub. L. 89-97, § 121, 79 Stat. 286, 352 (1965), *codified at* Act, § 1905(a) [hereinafter "IMD exclusion"].

16. The federal government has always participated in the cost of all Medicaid services provided to persons older than 65 who reside in IMDs, whether or not those services were provided in and by the IMD.

17. In 1968, Congress amended Title XIX to require Medicaid to cover "early and periodic screening and diagnosis of individuals who are eligible under the plan and are under the age of 21 to ascertain their physical and mental defects and such health care, treatment, and other measures to correct or ameliorate defects and chronic conditions discovered thereby[.]" Social Security Amendments of 1967, Pub. L. 90-248, § 302(a), 81 Stat. 821, 929 (1968), *codified at* Act, § 1905(a)(4)(B) (42 U.S.C. § 1396d(a)(4)(B)). This provision became known as the Early and Periodic Screening, Diagnosis, and Treatment ("EPSDT") benefit.

18. In 1972, Congress again expanded Medicaid to include coverage for services to children in IMDs by adding a new paragraph (16) to the definition of "medical assistance" to include "inpatient psychiatric hospital services for individuals under age 21." Social Security

5

Amendments of 1972, Pub. L. 92-603, § 299B, 86 Stat. 1329, 1460-61, *codified at* Act, § 1905(a)(16) (42 U.S.C. § 1396d(a)(16)). Congress also changed the wording of the IMD exclusion so that it now states that "except as otherwise provided in paragraph (16)"—the newly added service—the term "medical assistance" "does not include . . . . (B) any such payments with respect to care or services for any individual who has not attained 65 years of age and who is a patient in an institution for mental diseases." Act, Section 1905(a) (42 U.S.C. § 1396d(a)); *see* Pub. L. 92-603, § 299B(c), 86 Stat. at 1461. Congress also enacted provisions designed to ensure that the new service would meet certain standards. It required, as a condition for federal funding, that the new service involve "active treatment" that a team of physicians and other qualified personnel had determined to be necessary and reasonably likely to lead to improvement of the child's condition. Pub. L. 92-603, § 299B(b), 86 Stat. at 1461, *codified at* Act, Section 1905(h) (42 U.S.C. § 1396d(h)).

19. In 1989, Congress clarified that children receiving the EPSDT benefit should receive all services that could be provided as "medical assistance," whether or not States had elected to include these services in their State plans. It did so by adding a definition of the EPSDT benefit at subsection (r) of Section 1905 of the Act. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, § 6403(a), 103 Stat. 2106, 2263 (1989), *codified at* Act, § 1905(r) (42 U.S.C. 1396d(r)). New subsection 1905(r)(5) provided that EPSDT must include "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in section 1905(a) to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." *Id.*

20. "Inpatient psychiatric services for individuals under age 21" is an optional Medicaid service that States need not include in their State plans. *See* Act, Section 1902(a)(10)(A) (42 U.S.C. § 1396a(a)(10)(A)). But because the EPSDT benefit requires States to provide children with all the Medicaid services they need, each State must provide inpatient psychiatric services to children who need them, whether or not it has included this service in its State plan.

21. After Congress expanded Medicaid to cover inpatient psychiatric services for children, Defendants published regulations and guidance in various formats describing or referring to such service. *See, e.g., State Medicaid Manual* §§ 4442.3, 4442.8 (1988 to present); *State Medicaid Manual* § 4390 (1985 to present); 42 C.F.R. § 435.1009 (2006-2008); 42 C.F.R. § 441.13 (1978-2008); 42 C.F.R. §435.1008 (1978-2006); "MSA Medical Assistance Manual: Inpatient Psychiatric Services for Individuals Under Age 21," Action Transmittal SRS-AT-147 (MSA) (Sept. 22, 1976); *Medical Assistance Manual* § 4-50-00 (July 8, 1976); 45 C.F.R. § 249.10(c)(1976); 45 C.F.R. § 248.4 (1974); 45 C.F.R. § 248.60 (1974). At no point, however, have Defendants stated in clear, unequivocal terms in their regulations or other guidance disseminated to DMAS that Medicaid funding is available *only* for inpatient psychiatric services, and not for any other health care items or services provided to children in IMDs, even if Medicaid would pay for the item or service for all other Medicaid-eligible children.

### B. Virginia's State Plan Reimbursement Methodology for Residential Treatment Facilities

22. In 1998, CMS, through regulation, provided that inpatient psychiatric services to children under 21 could be provided in "psychiatric residential treatment facilities," as well as psychiatric hospitals or psychiatric wings of general acute-care hospitals. 63 Fed. Reg. 64,195 (Nov. 19, 1998). Psychiatric residential treatment facilities provide an opportunity for making

inpatient psychiatric services available in a less restrictive and more integrated setting than a traditional psychiatric hospital.

23. In accordance with the new flexibility, in 2000 Virginia amended its State plan to allow for Medicaid payment to psychiatric residential treatment facilities providing inpatient psychiatric services to children. The new plan language provided for a per diem rate, which "shall constitute payment for all residential psychiatric treatment facility services, excluding all professional services." Under this plan amendment, the professional services provided as part of a child's treatment plan are reimbursed separately from the per diem rate paid to the facility. The per diem rate to the institutional providers includes room and board, nursing care, and appropriate therapeutic interventions such as group psychoeducational activities, socialization, and behavioral interventions. More intensive individual, group, and family psychotherapy; laboratory work; occupational therapy; physical therapy; and speech-language pathology services are all billed separately by qualified, enrolled Medicaid providers. Some facilities are reimbursed for pharmacy services in the per diem rate; in other cases, pharmacy services are separately reimbursed.

24. At no time during the review process for this State plan language did CMS staff ever inform DMAS that Medicaid did not cover services paid separately from the IMD facility payment. Nor did they ever inform DMAS that its decision to separate payment to psychiatric residential treatment facilities into a facility component and a professional services component might result in a disallowance of federal financial participation in the costs of professional services and other expenditures not included in the IMD payment.

C.  **The Disallowance and Appeal to DAB**

25. In 2001, the Department of Health and Human Services' Office of the Inspector General ("OIG") initiated a series of audits of States' claims for federal financial

8

participation in the cost of providing medical assistance to children under age 21 in IMDs. The auditors took the position that, because of the IMD exclusion, the federal government should pay *only* for inpatient psychiatric services provided to children in IMDs and should not pay for any other health care services children needed while they were in an IMD. The OIG eventually recommended disallowances of the federal share of the costs of all medical services provided to IMD residents under age 21 in each of the seven States it audited: Pennsylvania, California, New Jersey, New York, Texas, Florida—and Virginia.

26. In 2001-2002, the OIG audited Virginia's claims for federal funding in the cost of services provided from July 1, 1997 to June 30, 2001 to children in 27 privately and publicly operated IMDs. In March 2004, the OIG recommended a disallowance of $3,948,532 in federal funds for those services, including claims for physician, pharmacy, outpatient hospital and clinic, inpatient acute care, and other medical services. OIG, *Review of Medicaid Claims for Beneficiaries under the Age of 21 Who Reside in Institutions for Mental Diseases in the Commonwealth of Virginia*, Report No. A-03-01-00225 (March 2004). DMAS contested the OIG's findings in a June 3, 2004 letter to the CMS regional office.

27. In 2007, the Board ruled on New York's appeal of one of the disallowances resulting from the OIG audits of services provided to children residing in IMDs. *New York State Department of Health*, DAB No. 2066 (2007). In that decision, the Board upheld CMS's interpretation of the IMD exclusion. But it also indicated that "inpatient psychiatric services to individuals under age 21" included medical care provided in and by the IMD, if that medical care fell within the scope of a child's inpatient psychiatric treatment plan. New York did not seek judicial review of DAB No. 2066.

28. In a letter dated February 29, 2008—nearly four years after DMAS had responded to the OIG audit—CMS issued the recommended disallowance against DMAS, stating that:

> DMAS must document, at a minimum, that the costs are psychiatric hospital services provided in and by an IMD. The Commonwealth has not done that.
>
> Some of the services challenged were clearly provided outside the IMD. . . . For the remaining costs, the Commonwealth has not demonstrated where the services were provided. Even if the challenged services were provided in and by an IMD, DMAS has not documented that payment for the services is consistent with the payment methodology established in its state plan in psychiatric services. . . . While the physician services are professional services that are . . . excluded from the per diem rate, neither the State plan nor any documented State policy or procedure establish that these physician services are a component of inpatient psychiatric hospital services. The State did not, for example, demonstrate that the physicians at issue were employees of the inpatient psychiatric hospital facilities, or were otherwise delivering services as a component of inpatient psychiatric hospital services.
>
> In short, the State did not document that the challenged costs were for "inpatient hospital services."

Letter from Ted Gallagher, Associate Regional Administrator, CMS Region III, to Patrick W. Finnerty, Director, DMAS, at 2-3 (Feb. 29, 2008).

29. DMAS appealed to the DAB, and asked the Board to reconsider its decision to uphold CMS's interpretation of the IMD exclusion in the New York appeal. DMAS also submitted evidence in support of its argument that, even under CMS's interpretation of the statute, the disallowance included payments for psychiatric services and medications that should be reimbursed, even though they were paid separately from the facility payment to the IMDs.

D.   **The DAB's Decision**

30. In a decision dated December 31, 2008, the Board upheld the disallowance. The Board did not reconsider its holding in the New York appeal. *See* DAB No. 2222, at 2-3.

Instead, as it had done in the New York appeal, it held that the plain wording of the IMD exclusion unambiguously provides that federal funds are available for services provided to children under age 21 residing in IMDs only if those services are provided in and by the IMD. *See id.* at 8-10. The Board stated that its decision "does not . . . preclude CMS from allowing some of the claims if it determines" that some of the services for which payment had been disallowed were provided "in and by" an IMD. *Id.* at 26.

31. CMS withheld the amount of the disallowance, plus $41,378 in interest, from Virginia's Medicaid grant in January 2009. To date, the amount of the disallowance has not been reduced.

## COUNT I

### (Arbitrary and Capricious Agency Action, 5 U.S.C. § 706(2)(A))

32. Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 31 as if fully set forth herein.

33. The DAB's decision constitutes final agency action under the APA, 5 U.S.C. § 704. Under the APA, 5 U.S.C. § 706(2)(A), this Court is required to hold unlawful and set aside final agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

34. Congress has long supported federal funding for all Medicaid services provided to children, and for all Medicaid services provided to persons aged 65 and over in IMDs. In adding inpatient psychiatric services to children as a Medicaid benefit in 1972, Congress did not intend to limit the coverage for children in IMDs only to inpatient psychiatric services.

35. The DAB's decision, therefore, is inconsistent with the Act and the intent of Congress.

36. Accordingly, the Defendants' actions are arbitrary, capricious, an abuse of discretion, and/or not in accordance with law, in violation of the APA.

## COUNT II

### (Agency Action Without Observance of Procedure Required by Law, 5 U.S.C. § 706(a)(2)(D))

37. Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 31 as if fully set forth herein.

38. Under the APA, 5 U.S.C. § 706(a)(2)(D), this Court is required to hold unlawful and set aside agency action that is without observance of procedure required by law.

39. The APA provides that federal agencies may issue substantive rules only after notice-and-comment rulemaking. 5 U.S.C. § 553.

40. Federal law provides that persons may not be adversely affected by an agency statement of general policy or interpretation of general applicability unless they have had actual and timely notice of that policy statement or interpretation. 5 U.S.C. § 552(a)(1)(D).

41. Defendants' position that Medicaid will not cover the costs of services provided to children in IMDs, other than inpatient psychiatric services, amounts to a substantive rule, or, at the very least, is an agency statement of general policy or interpretation of general applicability.

42. Defendants have never issued any rule through notice-and-comment rulemaking expressly stating that they will provide federal financial participation only in the costs of inpatient psychiatric services for children in IMDs, and not in any other Medicaid services. They have never published any such statement in the Federal Register. None of Defendants' formally promulgated regulations or other agency guidance gave DMAS actual and timely notice that Defendants would cover only the costs of inpatient psychiatric services for

-
-

children in IMDs, and no other medically necessary services, including professional services and medication.

43. DMAS could have avoided the disallowance if it had had adequate prior notice of Defendants' position.

44. By taking a disallowance against DMAS without engaging in notice-and-comment rulemaking, or otherwise providing actual and timely notice of CMS's interpretation of the scope of the medical assistance available to children in IMDs, Defendants have acted without observance of procedure required by law.

## REQUEST FOR RELIEF

WHEREFORE, DMAS asks this Court to award the following relief:

### A. Declaratory Judgment

1. DMAS asks this Court to issue a declaratory judgment that so long as a Medicaid-eligible child is receiving inpatient psychiatric services, he or she is not subject to the IMD exclusion, and federal funding is available for all Medicaid services he or she receives.

2. DMAS asks this Court to issue a declaratory judgment that Defendants failed to engage in required notice-and-comment rulemaking setting forth their position that the federal government will not share in the cost of any services, other than inpatient psychiatric services, provided to children in IMDs. Alternatively, DMAS asks this court to issue a declaratory judgment that Defendants failed to observe procedure required by law, because, prior to taking adverse action against DMAS, they did not give DMAS actual and timely notice of their position.

3. DMAS further asks this Court to issue a declaratory judgment that DAB Decision No. 2222, and the underlying disallowance imposed against Virginia, are unlawful and without effect.

**B.    Injunctive Relief**

1. DMAS asks this Court to enjoin Defendants and their agents, employees, successors in office, and all persons acting in concert or participation with them from enforcing or giving effect to DAB Decision No. 2222 or the underlying disallowance.

2. DMAS further asks this Court to require Defendants to return the full amount of the disallowance, plus interest, to Virginia.

**C.    Other Relief**

DMAS asks this Court to:

1. Order a speedy hearing on this matter and advance it on the calendar;

2. Award DMAS all costs and fees incurred for this action;

3. Retain jurisdiction over this action for such additional and supplemental relief as may be required to enforce the order and judgment; and

4. Award DMAS such other relief as may be just and proper.

Respectfully submitted,

_/s/ Caroline M. Brown_
Caroline M. Brown (D.C. Bar No. 438342)
Laura E. Schattschneider (D.C. Bar No. 976423)*
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
(202) 662-6000

\* Admitted to the Bar of the District of Columbia, but not admitted to practice before this Court. Petition for admission is pending.