IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VIRGINIA DEPARTMENT OF<br>MEDICAL ASSISTANCE SERVICES, | )<br>)<br>) | |
| *Plaintiff*, | )<br>) | CASE NO. 1:09-cv-00392 BJR |
| v. | )<br>) | |
| UNITED STATES DEPARTMENT<br>OF HEALTH AND HUMAN SERVICES,<br>et al., | )<br>)<br>)<br>) | ORDER GRANTING DEFENDANTS'<br>CROSS MOTION FOR SUMMARY<br>JUDGMENT<br>AND DENYING PLAINTIFF'S MOTION<br>FOR SUMMARY JUDGMENT |
| *Defendants*. | ) | |

This matter comes before the court on cross motions for summary judgement. The court has reviewed the relevant documents filed by the parties and being fully informed finds and rules as follows:

I. INTRODUCTION

This case arises out of a dispute between Virginia Department of Medical Assistance Services ("Virginia") and the federal Centers for Medicare & Medicaid Services ("CMS") regarding how much the federal government, through Medicaid, should share in the cost of medical care for children residing in institutions for mental diseases ("IMDs"). Congress has generally excluded persons in mental institutions from federal assistance programs, relying on

1

the states to provide such assistance. In keeping with this policy, a Medicaid provision known as the "IMD exclusion" prohibits Medicaid funding for services to most IMD residents. However, in 1972, Congress created an exception to the IMD exclusion. It added a new category of service—inpatient psychiatric services for individuals under the age of 21—to the list of Medicaid services for which federal funding is available. The parties dispute what federally funded services are available to children in IMDs under the "under-21 exception" to the IMD exclusion.

Virginia challenges a determination by CMS disallowing $3,948,352 in federal funding that Virginia claimed for services provided to children residing in IMDs. CMS based the disallowance on an Office of the Inspector General ("OIG") 2001-2002 audit of Virginia's claims for services provided to children in 27 publically and privately operated IMDs during the time period July 1, 1997 through June 30, 2001. CMS determined that Virginia improperly claimed federal financial participation in physician, pharmacy, outpatient hospital and clinic, inpatient acute care, community mental health, and other services provided to children who resided in IMDs.[1]

## II. PROCEDURAL HISTORY

Virginia appealed the disallowance to the Health and Human Service's Departmental Appeals Board (the "DAB") on April 1, 2008. The DAB is an adjudicatory body to whom the Secretary has delegated authority to review disallowances under the Title XIX of the Social

---

[1] The OIG audited seven states. *See* DAB Decision No. 2222 (Dec. 31, 2008) (AR00001 – AR00026, at AR00019). The officials in four of those seven states accepted CMS' interpretation of the statutory language and did not object to the disallowances. *See Letter dated January 23, 2003 from Bob Sharpe, Deputy Secretary for Florida Medicaid* (AR00273-274); *letter dated June 13, 2003 from Albert Hawkins, Commissioner of the Texas Health and Human Services Commission* (AR00276-00278); *letter dated September 28, 2004 from Ann Clemency Kohler, Director of New Jersey's Department of Human Services* (AR00267-268). New York, Virginia and Kansas contested CMS' interpretation. In 2007, New York State unsuccessfully appealed CMS' decision on substantially similar grounds to those raised here. *See* DAB Decision No. 2066 (Feb. 8, 2007), 2007 WL 522134 (H.H.S.).

2

Security Act, or Medicaid. *See* 45 C.F.R. Part 16, Appendix A, ¶ B (a)(1).The DAB upheld CMS's determination in Decision No. 2222, dated December 31, 2008. (AR00001-AR00026.). On February 26, 2009, Virginia filed this suit seeking declaratory and injunctive relief and reversal of DAB Decision No. 2222.

The parties agree that discovery is not appropriate and that the case can be resolved on the administrative record by dispositive motions. Accordingly, cross motions for summary judgment have been filed.

## III. BACKGROUND

*A. Statutory and Regulatory Background*

Title XIX of the Social Security Act (the "Act") established the Medicaid program, in which the federal government and the states jointly share in the cost of providing health care to low-income individuals and families. Each state operates its own Medicaid program in accordance with broad federal requirements and the terms of its Medicaid state plan. If the state's Medicaid plan is approved by the Secretary, the state generally becomes eligible to receive federal funding (known as federal financial participation or "FFP").

Section 1903(a)(1) of the Act makes FFP available on a quarterly basis to states for amounts expended "as medical assistance under the State plan . . . ." The term "medical assistance" is defined in section 1905(a) of the Act. That section begins by defining the term to mean payments for various categories of services that either must or may be covered under a state Medicaid plan, provided they meet certain conditions and are provided to specified eligible individuals. After the list of services, the definition of "medical assistance" contains the following language:

[E]xcept as otherwise provided in paragraph (16), such term does not include-

* * *
(B) any such payments with respect to care or services for any individual who has not attained 65 years of age and who is a patient in an institution for mental diseases.

Paragraph (16) identifies (as one of the categories of service for which federal funding is available) "<u>inpatient psychiatric hospital services</u> for individuals under age 21, as defined in subsection (h)." (Emphasis added.). Subsection (h)(1) states:

> For purposes of paragraph (16) of subsection (a), the term "inpatient psychiatric hospital services for individuals under age 21" includes only-
>
> > (A) inpatient services which are provided in an institution (or distinct part thereof) which is a psychiatric hospital . . . or in another inpatient setting that the Secretary has specified in regulations;
> > (B) inpatient services which, in the case of any individual (i) involve active treatment . . . , and (ii) a team . . . has determined are necessary on an inpatient basis and can reasonably be expected to improve the condition, by reason of which such services are necessary, to the extent that eventually such services will no longer be necessary; and
> > (C) inpatient services which, in the case of any individual, are provided prior to (i) the date such individual attains age 21, or (ii) in the case of an individual who was receiving such services in the period immediately preceding the date on which he attained age 21, (I) the date such individual no longer requires such services, or (II) if earlier, the date such individual attains age 22; . . .

The IMD exclusion in section 1905(a) is implemented by regulations that address limitations on funding for "[i]nstitutionalized individuals." Specifically, section 435.1008 of 42 C.F.R. provides:

> (a) [Federal funding] is not available in expenditures for services provided to-
>
> * * *
> (2) Individuals under age 65 who are patients in any institution for mental diseases unless they are under age 22 and are receiving <u>inpatient psychiatric services</u> under § 440.160 of this subchapter.
>
> * * *
> (c) An individual on conditional release or convalescent leave from an institution for mental diseases is not considered to be a patient in that institution. However, such an individual who is under age 22 and has been receiving inpatient

psychiatric services under § 440.160 of this subchapter is considered to be a
patient in the institution until he is unconditionally released, or, if earlier, the date
he reaches age 22.

(Emphasis added.) *See, also*, §§ 436.1004; 441.13(a). The phrase "[i]n an institution" refers to "an individual who is admitted to live there and receive treatment or services provided there that are appropriate to his requirements." 42 C.F.R. § 435.1009.

Section 440.160 defines "[i]npatient psychiatric services for individuals under age 21" to mean services that:

(a) Are provided under the direction of a physician;
(b) Are provided by-
(1) A psychiatric hospital or an inpatient psychiatric program in a hospital, accredited by the Joint Commission on Accreditation of Healthcare Organizations, or
(2) A psychiatric facility which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the Council on Accreditation of Rehabilitation Facilities, or by any other accrediting organization, with comparable standards, that is recognized by the State.
(c) Meet the requirements in § 441.151 of this subchapter.

Section 441.151 contains general requirements for inpatient psychiatric services for individuals under age 21. Other provisions in subpart D of part 441 of 42 C.F.R. explain other requirements from section 1905(h), such as the requirements regarding the need for services on an inpatient basis and for active treatment.

### B.     Factual Background

The OIG conducted a review to determine if controls were in place to preclude Virginia from claiming federal funding under Medicaid for medical services that were not inpatient psychiatric services, provided to residents of IMDs under the age of 21. *See* DAB Decision No. 2222 at AR00007. The review concluded that Virginia "did not have controls in place to preclude FFP from being claimed for medical services provided to IMD residents under the age of 21." *Id*. According to the reviewers, this resulted in 119,922 improper claims out of the

5

132,135 claims reviewed for the audit period. *Id*. The auditors identified the services as inpatient acute care, or physician, pharmacy, outpatient hospital and clinic, or other medical services. *Id*. Based on the audit report, CMS disallowed $3,948,532 in federal funding for the claims identified by the auditors as improper. *Id*.

IV.     LEGAL ANALYSIS

*A.     Standard of Review*

Under Federal Rule of Civil Procedure 56, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). "Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record." *Fund for Animals v. Babbitt*, 903 F.Supp. 96, 105 (D.D.C.1995) (citing *Richards v. Immigration & Naturalization Serv.*, 554 F.2d 1173, 1177 (D.C.Cir.1977)). Because this case involves a challenge to a final agency action, the court's review is limited to the administrative record. *Fund for Animals*, 903 F.Supp. at 105 (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Therefore, this case may be appropriately resolved on cross-motions for summary judgment.

Judicial review of a final determination rendered by a federal agency generally is governed by the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (the "APA"). *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, (1994). The APA requires a reviewing court to affirm an agency's conclusions of law unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc.*

*v. DEA*, 259 F.3d 731, 736 (D.C.Cir.2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted).

As the Supreme Court has explained, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 (1977). If the district court can "reasonably discern" the agency's path, it should uphold the agency's decision. *Public Citizen, Inc. v. Federal Aviation Administration*, 988 F.2d 186, 197 (1993).

The Supreme Court set forth a two-step approach to determine whether an agency's interpretation of a statute is valid under the APA. *Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). This approach, commonly referred to as "*Chevron* deference," requires the court to first look to "whether Congress has spoken to the precise question at issue." *Id*. If so, the court ends its inquiry. *Id*. But, if the statute is ambiguous or silent, the second step requires the court to defer to the agency's position, so long as it is "based on a permissible construction of the statute." *Id*. at 843; *Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 645 (D.C.Cir.1998) (holding that "[*Chevron*] deference comes into play of course, only as a consequence of statutory ambiguity, and then only if the reviewing court finds an implicit delegation of authority to the agency").

In reviewing an agency decision, courts "accept[] the [agency's] findings of fact as long as they are supported by 'substantial evidence.'" *National Rural Electric Cooperative Assoc. v. Securities and Exchange Commission*, 276 F.3d 609, 614 (D.C. Cir. 2001) (omitting references). The substantial-evidence test is a narrow standard of review requiring only so much relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Robinson v. NTSB*, 28 F.3d 210, 215 (D.C. Cir. 1994). The court must accept decisions based on substantial evidence "even though a plausible alternative interpretation of the evidence would support another view." *Id*.

### B. *The Statute Is Not Ambiguous*

Virginia argues that the DAB decision upholding the Secretary's interpretation of the "under-21 exception" to the IMD exclusion is based on a "crabbed and impractical reading" of section 1905(a). (Dkt. No. 14 at 2.). Virginia contends that the relevant statutory language is ambiguous and that the Secretary's interpretation of it runs "directly contrary to the way in which the Medicaid program was developed…." *Id*. Virginia concludes by arguing that the Secretary's interpretation of section 1905(a) is "so unreasonable as to be 'arbitrary,' 'capricious,' and 'not in accordance with law.'" *Id*. citing 5 U.S.C. § 706(2)(A). The court finds Virginia's arguments to be unpersuasive.

In support of its argument, Virginia points out that Congress' decision to provide federal funding for elderly psychiatric inpatients was premised upon a requirement that those individuals would receive all necessary medical services. (Dkt. No. 18 at 3.). Virginia argues that "[t]here certainly is no indication that Congress" intended anything less for children when it "took the next 'rational step toward broadening the class of persons receiving federal benefits.'" (Dkt. No. 14 at 23 *quoting Kantrowitch v. Weinberger*, 388 F. Supp. 1127, 1131 (D.D.C. 1974), *aff'd*, 530

8

F.2d 1034 (D.C. Cir. 1976). As evidence of this, Virginia points to the fact that Congress requires inpatient psychiatric services for children to include an "active treatment plan." *See* §1905(h)(1)(B)(i). The active treatment plan requirement is consistent with the EPSDT[2] focus on treating a child's condition, with the goal that the child will develop into a healthy adult.

The court finds persuasive the government's argument that the relevant statutory language is unambiguous. The IMD exclusion is clear: except as provided in paragraph (16), FFP is not available for any medical care for any individual under age 65 who is a patient in an IMD. *See* § 1905(a)(28)(B). The exclusion applies to both IMD and non-IMD services. The DAB has repeatedly affirmed this interpretation of the IMD exclusion. *See e.g., California Dept. of Health Services*, DAB Decision No. 1338 (1992) (holding that the IMD exclusion prohibited Medicaid payment for both institutional and non-institutional services provided to IMD residents between 21 and 64; rejecting California's argument that the IMD exclusion prohibited payment of the institutional services only); *New York State Dept. of Health*, DAB Decision No. 1867 (2003) (the IMD exclusion is a general limit on Medicaid eligibility of individuals, by virtue of their institutional status, as well as a limit on particular covered services). Indeed, the description of the other covered institutionalized services demonstrates that Congress intended for the IMD exclusion to apply to both IMD and non-IMD services. *See* §1905(a)(1) (authorizing Medicaid funding for inpatient hospital services, other than services in an IMD); §1905(a)(4)(A) (providing for nursing facility services, except in an IMD).

---

[2] EPSDT stands for Early and Periodic Screening, Diagnosis and Treatment. In 1967 Congress amended Title XIX to require that Medicaid cover "early and periodic screening and diagnosis" of Medicaid-eligible children "to ascertain their physical or mental defects" and to provide "health care, treatment, and other measures to correct or ameliorate defects and chronic conditions discovered thereby[.]" Social Security Amendments of 1967, Pub. L. No. 90-248, § 302(a), 81 Stat. 821, 929 (1968), codified at SSA §1905(a)(4)(B) (AR00087).

Likewise, the "under-21 exception" to the IMD exclusion is equally clear: FFP is only available for inpatient psychiatric hospital services for individuals under age 21 that are provided in an IMD. *Id*. at §1905(a)(16) and § 1905(h)(1). Paragraph (16) provides for only one category of Medicaid service—inpatient psychiatric hospital services for individuals under age 21 as defined in subsection (h). Subsection (h) in turn defines inpatient psychiatric services as only those inpatient services that are provided under the direction of a physician in a psychiatric hospital. *Id.* at § 1905(h)(1)(A) and (B)(ii). Virginia points to nothing in the statutory language of the under-21 exception from which it logically follows that Congress intended to make FFP available for all services to IMD residents under age 21, no matter who provides the services or where they are provided. Accordingly, the statutory language is unambiguous both with respect to the scope of the IMD exclusion and the with respect to the scope of the under-21 exception.

Because the statute is unambiguous, the court does not need to address, and indeed should not address, Virginia's remaining arguments regarding legislative and regulatory history. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43.

  *C.* *Virginia Had Timely Notice of How CMS Interpreted the Statute*

Virginia argues that CMS cannot rely on section 1905(a) in a manner that adversely affects states without first giving them notice of its interpretation of the provision. *See* 5 U.S.C. § 552 (a)(1)(D). Section 552 (a)(1)(D) states: "Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency…" Virginia contends that no such

10

notice was provided in this case. The disallowance is therefore "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), and should be vacated.[3]

CMS responds that 5 U.S.C. § 552 is not applicable because the Secretary's position is not based on policy adopted by the agency, but rather, is based on the plain language of the Medicaid statute. *See e.g. Clarry v. U.S.*, 891 F. Supp. 105 (E.D.N.Y. 1995), *aff'd* 85 F.3d 1041 (2d Cir. 1995) (APA's notice requirements apply only to rules adopted by the agency, not application of a statute). Regardless, 5 U.S.C. 552(a)(1) states that an agency can nevertheless enforce a rule that an agency failed to publish against a party that "has actual and timely notice" of the rule.

Here, the DAB held that "Virginia had timely, actual notice of how CMS read the statute." DAB Decision No. 2222 at AR00018. The DAB held that a State Medicaid Manual ("SMM") provision provided Virginia with sufficient notice of the agency's reading of the statute. The 1994 version of the provision, § 4390 of the SMM, informed States that Medicaid payment "is not available for any…services provided to any individual who is under age 65 and who is a patient in an IMD unless the payment is for inpatient psychiatric services for individuals under age 21." *Id*.; AR00130. The DAB rejected Virginia's argument that this provision did not provide "sufficient" or "effective" notice, finding instead that the 1994 version of § 4390 was

---

[3] Virginia also argues that during the relevant time period, its Medicaid State Plan provided that payment would be made for inpatient psychiatric services by using a per diem payment rate. *See* DAB Decision No. 2222 at AR00020. Virginia argues that this demonstrates that it did not have sufficient notice of CMS' interpretation of the "under-21 exception" because if it had known that CMS would not reimburse professional services to children in IMDs that were not included in the per diem rate, "Virginia would have implemented a different reimbursement methodology for Residential Psychiatric Treatment Services." *Id*. The court finds persuasive the DAB's rejection of this claim. *Id*. at AR00020. "[I]t is not surprising that, in the context of reviewing the State Plan provisions for residential treatment facilities, CMS would not have provided the warning Virginia says it would have expected. Whether professional services provided in IMDs are allowable does not depend on whether they were included in the per diem rate or billed separately, but on whether they are 'inpatient psychiatric services' meeting federal requirement." *Id*. at AR00021.

11

consistent with "many earlier statements about the scope of the exception" both in the regulatory preambles and in the 1986 version of § 4390. *Id.* at AR00019; AR00262.

The DAB also held that Virginia's notice argument is contradicted by the statements of other state officials during the OIG audits. As the DAB noted, audits like the one in Virginia were conducted in six other states, and officials in four of those states either acknowledged that it was improper for outside medical providers to claim for services provided to children in IMDs or agreed that the only service to children in the IMDs for which FFP could be claimed was inpatient psychiatric services. *Id.* at AR00019; AR00264-66, 270-71, 273, 276.

Whether Virginia received timely, actual notice of the Secretary's position on the under-21 exception to the IMD exclusion is a factual determination, entitled to deference from this court if the finding is supported by substantial evidence. *See Robinson*, 28 F.2d at 215 (the court must defer to the DAB's factual finding if there is substantial evidence that a reasonable mind might accept as adequate to support the conclusion.) This court finds that the DAB's finding that Virginia received timely, actual notice is amply supported by substantial evidence. Therefore the court will not disturb this finding.

   D.   *The Disallowed Claims*

Virginia asserts that even if the court holds that the statute plainly supports CMS' position, part of the disallowance should be reversed because Virginia submitted evidence sufficient to show that many of the disallowed claims were for inpatient psychiatric services. Virginia bears the burden of proving that the claims are allowable, *New Jersey Dept. of Human Services*, DAB No. 899 (1987), something CMS contends that Virginia has failed to do.

Virginia analyzed the OIG audit records of the disallowed claims, and matched the data in those records to information in its claims system. Starting with the premise that Congress

12

clearly meant to allow federal funding for all psychiatric services provided to all children in IMDs, Virginia identified claims with procedure codes associated with psychiatric services. *See* AR00302-05, AR00308. Based on this analysis, Virginia contends that $2,381,488 of the $3,948,532 disallowed was for psychiatric services and medications. *Id*. at AR00296-97, AR00304. Next, Virginia then filtered the claims to those provided "in" the IMD and determined that $1,702,768 of the claims were provided on an inpatient basis. *See* AR00305. Finally, Virginia filtered the claims to those inpatient psychiatric services that were also provided "by" the IMD. Virginia claims that $618,560 of the disallowed claims satisfied the criteria. *Id*. at AR00397-400. The DAB found that Virginia's evidence "indicates that some of the claims may be allowable but falls far short of establishing which particular claims were allowable." DAB Decision 2222 at AR00003.

To support its position that the disallowance amount should be reduced, Virginia relied on a declaration of William J. Lessard, Jr., Director of Provider Reimbursement for Virginia. *See* AR00022, AR00301-371 Mr. Lessard broke the disallowed claims into four service categories (professional, pharmacy, outpatient hospital/clinic, and others), identified amounts as "psychiatric" or "non-psychiatric" for each category, and, for the category "professional services," further identified the amounts as inpatient or non-inpatient services. AR00302-304.

Mr. Lessard determined whether a professional service was provided "in an inpatient setting" by determining from state claim files whether the place of service ("POS") code was "Code 21." *Id*. He used the code descriptors for the procedure and diagnosis codes attached to the claims to classify the services as "psychiatric" or "non-psychiatric" and classified the medications associated with the pharmacy claims as "psychiatric" or "non-psychiatric." *Id*.; AR00022.

13

The DAB found that the information provided in Mr. Lessard's revised declaration fell short of establishing which claims, if any, may be allowable. *Id.* at AR00023. The DAB found that Virginia failed to demonstrate whether the psychiatric services were provided *in* and *by* an IMD:

> It is not reasonable to infer merely from the fact that some of the claims had diagnosis or other codes that led Virginia to classify them as "psychiatric" that those claims were part of the inpatient psychiatric services provided by the IMDs. Indeed, some of the claims classified as "psychiatric" were for service categories (such as outpatient hospital or clinic services) which clearly would not be part of the inpatient psychiatric services provided by the IMDs.

AR00023-24. In addition, with respect to Virginia's analysis regarding the setting in which the services were provided, the DAB found that "POS Code 21," on which Virginia relied to determine where the services were provided, is for a "facility, *other than psychiatric*, which primarily provides diagnostic, therapeutic…and rehabilitation services…by physicians…" *Id.* at AR00024 (emphasis in original). This is strong evidence that the services were *not* provided in an IMD.

Finally, with respect to the pharmacy claims, Virginia requested that $979,624 in pharmacy claims be allowed solely on the basis "of Mr. Lessard's belief that they were inpatient services." *Id.* But, Mr. Lessard stated no basis for his belief. Also, as CMS pointed out, during the disallowance period, pharmacy services provided by residential treatment facilities were not always treated as "professional services" excluded from the per diem rates, and pharmacy services provided by psychiatric hospitals were included in the per diem rates. *Id.* Thus, even if the pharmacy services were provided on an inpatient basis, these separate claims could duplicate payments already made through the IMDs' per diem rates. *Id.* at AR00024-25.

Virginia filed a supplement declaration by Mr. Lessard in which he sought to establish that the services provided in the IMDs were provided *by* the IMDs by showing that the

14

disallowed claims were paid to providers with the same tax identification numbers as the IMDs. *Id.* at AR00025; AR00399-400. The DAB did not have an opportunity to review this information because it was provided after it reached its decision. However, the DAB stated that its decision would not preclude CMS from reducing the disallowance amount if it determined that the additional information provided by Virginia is sufficient to establish that some of the claims are allowable. *Id.* at AR00025.

CMS argues that this information still is not sufficient, claiming that Virginia did not provide any supporting documents that would permit it to verify any of the claims. In addition, there is concern that this additional analysis fails to demonstrate that the separately billed services had not already been paid for through the IMD's per diem rates. *See* DAB Decision No. 2222 at AR00025. This court agrees. Virginia has failed to meet its burden. Consequently, the disallowance must be upheld. *See City of Olmstead Falls, Ohio v. Federal Aviation Administration*, 292 F.3d 261, 271 (D.C.Cir. 2002).

## V. CONCLUSION

Based on the foregoing, it is HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is DENIED, and Defendants' Cross Motion for Summary Judgment is GRANTED. The case is DISMISSED.

DATED this 27th day of April, 2011.

A
Barbara Jacobs Rothstein
U.S. District Court Judge